YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
DAVID OKANO (SB# 278485)
davidokano@paulhastings.com
WOENHO CHUNG (SB#339987)
woenhochung@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:  1(650) 320-1800
Facsimile:  1(650) 320-1900

Attorneys for Defendants
Quintessential Brands S.A, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTESSENTIAL LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>QUINTESSENTIAL BRANDS S.A., et al.,<br><br>    Defendants. | CASE NO. 3:20-cv-01722-JD (JSC)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF QUINTESSENTIAL LLC'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (DKT. NO. 97)** |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................................. 2

      A.   QWines' Public Filing of Documents It Alleges Are Confidential and
           Multiple Week Delay in Raising Any Confidentiality Concerns ........................... 2

      B.   Statements Filed Publicly By QWines It Did Not Seek to Seal Relating to
           and Reflecting the Parties Communication During Mediation ............................. 3

III.  ARGUMENT ........................................................................................................................ 4

      A.   The Statements in Defendants' Opposition Are Admissible ................................. 4

           1.   FRE 408 Governs the Admissibility of the Statements in
                Defendants' Opposition that QWines' Seeks to Exclude ........................... 4

           2.   Under FRE 408, Evidence During Settlement Negotiations Is
                Admissible to Show the Intent of the Parties .............................................. 5

           3.   QWines Has No Basis Under Any Privilege Doctrine to Seek
                Exclusion of Communications Between the Parties After Mediation
                Concluded ....................................................................................................... 6

           4.   None of the Cases or Doctrines Relied on By QWines in Its Motion
                to Strike Are Applicable Here ....................................................................... 7

      B.   Defendants Did Not Violate Any Confidentiality Provisions of the Parties'
           Mediation Agreement ................................................................................................. 8

      C.   Sanctions Are Not Warranted .................................................................................. 10

IV.   CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 11-cv-1846-LHK, 2012 WL 4718104 (N.D. Cal. Sept. 28, 2012) .................................... 9

*Bernstein v. Target Stores, Inc.*,
  No. 13-cv-1018 NC, 2013 WL 5807581 (N.D. Cal. 2013) ...................................................... 9

*Cal. Serv. Emples. Health & Welfare Trust Fund v. Advance Bldg. Maint.*,
  No. 06-cv-3078 CW (BZ), 2007 U.S. Dist. LEXIS 68714 (N.D. Cal. Sept. 7, 2007) .............. 6

*Central Soya Co. Inc. v. Epstein Fisheries, Inc.*,
  676 F.2d 939 (7th Cir. 1982) .................................................................................................. 5

*Chi-Fu Hsueh v. Bankers Life & Cas. Co.*,
  421 F. Supp. 3d 937 (S.D. Cal. 2019) ..................................................................................... 7

*Connecticut Gen. Life Ins. Co. v Zilka*,
  56 F. Appx. 828 (9th Cir. 2003) ............................................................................................. 4

*CreAgri, Inc. v. Pinnaclife Inc.*,
  No. 11-cv-6635-LHK, 2014 WL 27028 (N.D. Cal. Jan. 2, 2014) ........................................... 9

*Facebook, Inc. v. ConnectU, Inc.*,
  No. 07-cv-1389 JW, 2008 WL 11357787 (N.D. Cal. July 2, 2008) ....................................... 8

*Facebook, Inc. v. Pac. Northwest Software, Inc.*,
  640 F.3d 1034 (9th Cir. 2011) ................................................................................................ 7

*Folb v. Mot. Picture Indus. Pension & Health Plans*,
  16 F. Supp. 2d 1164 (C.D. Cal. 1998) *aff'd*, 216 F.3d 1082 (9th Cir. 2000) ..................... 4, 6

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ................................................................................................ 9

*Hasbro, Inc. v. Sweetpea Entm't, Inc.*,
  No. 13-cv-3406-DMG, 2014 U.S. Dist. LEXIS 199557 (C.D. Cal. Feb. 25, 2014) ............... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  835 F.3d 1155 (9th Cir. 2016) ................................................................................................ 5

*Johnson v. Am. Online, Inc.*,
  280 F. Supp. 2d 1018 (N.D. Cal. 2003) .................................................................................. 7

*Kamakana v. City and Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ................................................................................................ 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Molina v. Lexmark Intern., Inc.*,
　No. 08-cv-4796 MMM, 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008).................. 6

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
　307 F.3d 1206 (9th Cir. 2002)................................................................................ 9

*Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*,
　254 F.R.D. 568 (N.D. Cal. 2008)............................................................................ 5

*Religious Tech. Center v. Wollersheim*,
　971 F.2d 364 (9th Cir. 1992)................................................................................... 4

**STATUTES**

15 U.S.C.
　§ 1051..................................................................................................................... 4
　§ 1121..................................................................................................................... 4
　§ 1125(a)................................................................................................................. 4

28 U.S.C.
　§ 1338(a)................................................................................................................. 4
　§ 1927................................................................................................................... 10

I.   **INTRODUCTION**

Apparently unsatisfied with the binding term sheet the parties executed last June, plaintiff Quintessential LLC ("QWines") continues its unfounded attempts to add requirements and restrictions to the agreement that were specifically rejected by the Defendants during mediation through vague assertions about the parties' "intent." When faced with detailed factual accounts of mediation proceedings by those who attended it and negotiated the binding term sheet on behalf of Defendants Quintessential Brands S.A., Quintessential Brands North America, LLC, and MHW, Ltd. (collectively "Defendants" or "QBrands")—made under the penalty of perjury—QWines' filed this motion (Dkt. 99) in an effort to suppress Defendants' side of the story. QWines' motion is a legally unsupported attempt to prevent the Court from considering the full factual record needed to resolve QWines' motion to enforce purported contractual terms of the settlement agreement (Dkt. 94) and to determine the intent of **both** parties, which QWines put at issue by filing its motion.

In its motion to strike, QWines cobbles together disparate and unconnected cases that discuss court-ordered instead of private mediation, and address undisputedly different provisions in mediation agreements, to contend that a number of statements in Defendants' opposition to QWines' motion to enforce the settlement agreement (Dkt. 97) should be struck because they are either confidential or privileged. QWines' legal positions are not supported by the law.

*First*, federal common law and Rule 408 of the Federal Rules of Evidence ("FRE") apply to the admissibility of communications during mediation, not any California mediation confidentiality statutes. Under FRE 408, it is black letter law that the Court can consider communications during mediation to aid in interpretation of the contractual terms.

*Second*, the terms of the parties' mediation agreement do not cloak the parties' statements made during or after mediation concluded in some sort of absolute confidentiality that would prohibit disclosure **to the Court**. And even if they did, **QWines** destroyed any confidentiality by willingly filing both the binding term sheet and mediation agreement publicly, and failing to seek to seal such statements even after Defendants indicated they would not oppose a motion by QWines seeking to do so.

*Third*, there has been no bad faith or misconduct on the part of Defendants. The statements in Defendants' opposition to QWines' motion to enforce the settlement agreement are admissible and may be considered by the Court in resolving Plaintiffs' Motion to Enforce under FRE 408—regardless of any public confidentiality. If there is any bad faith, it is QWines' who has unreasonably multiplied these proceedings by filing motions without a reasonable legal basis.

Defendants request that the Court deny QWines all relief requested in its motion to strike.

## II. STATEMENT OF FACTS

### A. QWines' Public Filing of Documents It Alleges Are Confidential and Multiple Week Delay in Raising Any Confidentiality Concerns

This Court dismissed this case with prejudice on July 20, 2022 after the parties executed a binding term sheet that resolved QWines' claims. Dkt. 93. Months later, QWines put the interpretation of certain provisions of that binding term sheet into dispute by seeking to impose additional obligations on Defendants through a Motion to Enforce Settlement Agreement ("Motion to Enforce," Dkt. 94). With its motion, QWines **publicly** filed both the binding term sheet and declarations from QWines' principals with statements about the alleged **intent** of the parties on the meaning of those provisions during the mediation.

Defendants filed their opposition to QWines' motion on January 12, 2023. Dkt. 97. By stipulation, QWines' deadline for reply was three weeks later, on February 3, 2023. Dkt. 96. On the afternoon of February 3, QWines emailed Defendants alleging that their response filed three weeks earlier was a "clear violation of mediation privilege, and a breach of the parties' agreements". *See* Ou Decl., Ex. A. QWines demanded that Defendants withdraw their opposition brief or otherwise agree to shorten time on a motion to strike so that the anticipated motion could be heard at the same time as its motion to enforce the settlement agreement. *Id.* Without an explanation of why QWines needed to accelerate the timeline after waiting six months to file its motion, Defendants did not agree.

Shortly after midnight that evening, QWines filed its motion to strike and a motion to shorten time. Dkt. 100. In its motion to shorten time, QWines argued that expedited relief was appropriate to "remove such statements from the public record as quickly as possible." Dkt. 100

at 2:27–3:1. QWines, however, did not address its own public filing of the binding term sheet and statements reflecting communications by the parties during mediation, or file a motion to seal any of the earlier public filings.

Defendants sent correspondence to QWines requesting an explanation for why it had waited three weeks to raise a concern that the statements it now sought to strike were on the public record. Ou Decl., Ex. B. Defendants also requested QWines to explain the basis for its public filing of the binding term sheet in view of the positions it was taking in its motion to strike and motion to shorten time. *Id.* Defendants made clear they would not oppose a motion by QWines seeking to seal the statements if removing them from the public record was its concern. *Id.* QWines did not respond to Defendants' email or seek to seal the binding term sheet or statements reflecting the parties' communications during mediation that it publicly filed with its motion.

**B.    Statements Filed Publicly By QWines It Did Not Seek to Seal Relating to and Reflecting the Parties Communication During Mediation**

As discussed above, QWines' motion to enforce the settlement agreement (Dkt. 94) was filed on the public record, and included a copy of the parties' binding term sheet and sworn statements from its declarants about the alleged intent of the parties' on certain disputed provisions in the binding term sheet during the mediation. Many of the statements in QWines' publicly-filed motion appear to disclose the parties' communications during mediation in a similar manner as the statements in Defendants' motion that QWines seeks to strike. For example:

| Statements in QWines' Publicly-Filed Motion (Dkt. 94) | Statements in Defendants' Opposition QWines' Alleges Are Confidential |
|---|---|
| [Correspondence between Mr. Visone and Mr. Dennis Kreps.]<br>- *Dkt. 94-4 (Decl. of D. Kreps) ¶¶ 12–14, Exhibits A, B*<br>- *Dkt. 94 (Mot.), 6:14–17, 6:23–25* | [Same correspondence between Mr. Visone and Mr. Dennis Kreps.]<br>- *Dkt. 97-1 (Decl. of E. Visone), 6:22–7:14* |
| "It was my understanding ***at the time of execution*** of the Term Sheet that ***the Parties intended*** . . . . I would not have executed the Term Sheet if I had believed that the Parties intended to allow QB N.A. to continue using the @quintessentialbrands.com email domain…"<br>- *Dkt. 94-4 (Decl. of D. Kreps) ¶¶ 7–8* | "While modifying QBNA's email domain name was discussed during mediation, it was never a term agreed to be included in the Term Sheet. Visone Decl. ¶¶ 8-9. Both parties were aware that QBNA's email domain name would not change."<br>- *Dkt. 97 (Opp.), 11:3–6* |

| | |
|---|---|
| "It was my understanding *at the time of execution* of the Term Sheet that *the Parties intended* . . . . I would not have executed the Term Sheet if I had believed that it was limited to settlement between the Parties in the United States."<br><br>- *Dkt. 94-4 (Decl. of D. Kreps) ¶¶ 11, 9* | "'[N]on-US marks' were 'never discussed or agreed to during the mediation . . . It did not include any terms relating to non-US marks as they were never discussed."<br><br>- *Dkt. 97 (Opp.), 4:5–10* |

A more extensive table comparing the publicly-filed statements by QWines and the statements in Defendants' opposition that QWines seeks to exclude is included at Ou Decl., Ex. C.

## III.    ARGUMENT

### A.    The Statements in Defendants' Opposition Are Admissible

#### 1.    FRE 408 Governs the Admissibility of the Statements in Defendants' Opposition that QWines' Seeks to Exclude

FRE 408 governs the admissibility of the portions of Defendants' Opposition (Dkt. 97) that QWines seeks to strike. FRE 408 applies because the subject matter jurisdiction in this case is based upon federal question jurisdiction, as opposed to diversity jurisdiction. *See* Dkt. 86 (QWines' second amended complaint) ¶ 1 ("This is an action for federal trademark infringement and unfair competition (15 U.S.C. § 1125(a))" and the Court has "subject matter jurisdiction over Plaintiff's claim under and pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), as the claims arise under the federal Lanham Act, 15 U.S.C. § 1051, *et seq.*").

It is well settled that where a case arises under federal law, federal common law of privilege applies, both to federal claims and to any pendant state law claims. *See Folb v. Mot. Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1170 (C.D. Cal. 1998) *aff'd*, 216 F.3d 1082 (9th Cir. 2000) (examining Ninth Circuit precedent on choice of privilege law, and refusing to apply California state mediation privilege law in a case arising under federal law); *Religious Tech. Center v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) ("In federal question cases [with pendent state law claims], the law of privilege is governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience"); *Connecticut Gen. Life Ins. Co. v Zilka*, 56 F. Appx. 828, 829 (9th Cir. 2003) (rejecting Defendants' claim of privilege under California law because "[p]laintiffs' [] claim raised a federal question and therefore federal privilege law applies to the entire action, including pendent state law claims" and ***not***

mediation privilege). Indeed, this is made clear in the provisions of the binding term sheet itself, which provides that the agreement "will not be deemed inadmissible under provisions of . . . federal law," citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155 (9th Cir. 2016). *See* Dkt. 94-2 at 1. In *TFT*, the Ninth Circuit found that "[b]ecause, here, at the time the parties engaged in mediation, their negotiations concerned (and the mediated settlement settled) both federal and state law claims, the federal law of privilege applies." *TFT*, 835 F.3d at 1159.

    2. <u>Under FRE 408, Evidence During Settlement Negotiations Is Admissible to Show the Intent of the Parties</u>

While FRE 408 provides that settlement communications submitted "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction" are inadmissible, settlement communications submitted "for another purpose" are admissible. Fed. R. Evid. 408(b). Here, Defendants, have submitted the statements for the sole purpose of proving the parties' intent in the negotiations that led to the binding term sheet. "The prohibition on using compromise negotiations is therefore limited and the rule does not bar the admission of such negotiations for other permissible purposes." *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008).

Relevant here, courts have held that ***evidence of settlement negotiations is admissible to show the intent of the parties*** where the action relates to the enforcement of their resulting settlement agreement. *See Hasbro, Inc. v. Sweetpea Entm't, Inc.*, No. 13-cv-3406-DMG (JCGx), 2014 U.S. Dist. LEXIS 199557, at *16 (C.D. Cal. Feb. 25, 2014) ("The Rosenbaum testimony [Plaintiff] seeks to exclude again appears to relate to the parties' intentions in drafting the Agreement, not the parties' liability … Thus, Rule 408 does not render the testimony inadmissible."); Fed. R. Evid. 408 Ad. Comm. Notes (citing *Coakley & Williams v. Structural Concrete Equip.*, 973 F.2d 349 (4th Cir. 1992) (evidence of settlement is not precluded by Rule 408 where offered to prove a party's intent)); *Central Soya Co. Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982) (district court erred by excluding testimony of witness "present at the negotiations leading to the first settlement" between the parties because it's "purpose was to

1  demonstrate what the terms of the settlement . . . were" and therefore "not only proper under Rule
2  408; it was highly germane to the question").

3  Here, QWines has placed the intent of the parties squarely at issue through its motion that
4  seeks to add requirements and obligations to the binding term sheet that are not included in its
5  express text. In their opposition, Defendants have included statements during mediation, not to
6  prove a claim, but to show the intent of the parties surrounding the drafting of the provision in the
7  binding term sheet. In these circumstances, the law is clear: statements referenced in Defendants'
8  opposition to show the parties' intent when drafting the binding term sheet are admissible under
9  FRE 408.

### 3. QWines Has No Basis Under Any Privilege Doctrine to Seek Exclusion of Communications Between the Parties After Mediation Concluded

Further, QWines seeks to exclude statements between the parties after mediation concluded. There is no legal basis for QWines to seek exclusion of these post-mediation statements. This is because courts distinguish between communications during a mediation session and after it concludes, and have repeatedly found there to be *no* protection for post-mediation communications:

> ***Subsequent negotiations between the parties, however, are not protected even if they include information initially disclosed in the mediation***. To protect additional communications, the parties are required to return to mediation. A contrary rule would permit a party to claim the privilege with respect to any settlement negotiations so long as the communications took place following an attempt to mediate the dispute.

See *Folb*, 16 F. Supp. 2d at 1180 (emphasis added); *see also Molina v. Lexmark Intern., Inc.*, No. 08-cv-4796 MMM (FMx), 2008 WL 4447678, at *8 n.59 (C.D. Cal. Sept. 30, 2008) (same); *Cal. Serv. Emples. Health & Welfare Trust Fund v. Advance Bldg. Maint.*, No. 06-cv-3078 CW (BZ), 2007 U.S. Dist. LEXIS 68714, at *3-4 (N.D. Cal. Sept. 7, 2007) ("The record demonstrates that the mediation was terminated August 6 and that the August 7 discussion involving Mr. Vallen and plaintiffs' accountant and counsel did not occur before the mediator. Defendant improperly conflates settlement discussions independent of the mediation process with mediation itself.").

The mediation was terminated on June 7, 2022 after the parties executed the Binding Term Sheet. The parties never reached an agreement to revive the mediation, and QWines provides no

evidence to the contrary. Thus, there is not basis—even under an alleged "mediation privilege"—for QWines to seek exclusion of communications between the parties after June 8, 2022.

### 4.  None of the Cases or Doctrines Relied on By QWines in Its Motion to Strike Are Applicable Here

QWines makes several attempts to avoid FRE 408 through citation to various doctrines and examples of different mediation agreements. None of these are applicable here.

First, QWines' makes passing reference to the Northern District of California's ADR Local Rules. Dkt. 99 at 3–4. But this District's ADR Local Rules are not applicable to **private** mediation sessions, such as the mediation session between QWines and Defendants. *See Facebook, Inc. v. Pac. Northwest Software, Inc.*, 640 F.3d 1034, 1041 (9th Cir. 2011) ("In any event, the parties used a private mediator rather than a court-appointed one. Their mediation was thus not subject to the . . . ADR Local Rules, including Local Rule 6-11." (internal citations omitted)).

Second, QWines attempts to use specific provisions in **different** mediation agreements to shield statements surrounding the parties' mediation session. But these are inapplicable for the simple reason that they include different provisions that were specifically negotiated by the parties in those different cases.

For example, in *Facebook*, 640 F.3d at 1041 (Dkt. 99 at 4:6–23), the confidentiality agreement included a negotiated provision with greater protection than provided by FRE 408. *See Facebook*, 640 F.3d at 1041 ("All statements made during the course of the mediation . . . are non-discoverable and inadmissible **for any purpose** including in any legal proceeding. . . . No aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding.") (emphasis added). This similar "for any purpose" language was also added by the parties to the mediation agreement in *Chi-Fu Hsueh v. Bankers Life & Cas. Co.*, 421 F. Supp. 3d 937, 94344 (S.D. Cal. 2019) (Dkt. 99 at 4:24–5:6 ) ("No party may disclose, or use **for any purpose unrelated to the mediation**, data[,] . . . calculations[,] . . . or any other written or oral statement that is made in connection with the mediation[.]") (emphasis added). In *Johnson v. Am. Online, Inc.*, 280 F. Supp. 2d 1018, 1027 (N.D. Cal. 2003) (Dkt. 99 at 5:6–10), the agreement made clear that

1  "***no aspect of the mediation*** shall be relied upon or introduced as evidence in any . . . judicial. . .
2  proceeding" (emphasis added).

3  These cases are inapplicable here, because the mediation agreement between the parties
4  ***does not include*** any of the provisions in the cited cases. *See* Dkt. 99-1. Unlike the confidentiality
5  provisions in the cases cited by QWines, the agreement between the parties only protects
6  confidentiality for statements and writing during the mediation process "***to the extent allowed by***
7  ***law***." Dkt. 99-1 ¶ 8. The provision makes clear that "***evidence that is otherwise admissible or***
8  ***discoverable***," e.g., under FRE 408, "***shall not be rendered inadmissible or not discoverable as a***
9  ***result of its disclosure or use during the mediation***." The confidentiality provision in the parties'
10 agreement does not prevent the application of FRE 408 to permit use of statements made during
11 mediation for permissible purposes—such as to prove the intent of the parties.

   **B.  Defendants Did Not Violate Any Confidentiality Provisions of the Parties'
         Mediation Agreement**

14 QWines' also appears to contend that statements in Defendants' opposition should be
15 excluded because Defendants improperly filed confidential mediations statements publicly. *See*
16 Dkt. 99 at 9–10. QWines also seeks fees. *Id.* at 10. QWines' contentions lack merit.

17 First, QWines accusations are curious since it was ***QWines***—and not Defendants—who first
18 filed the binding term sheet and its motion to enforce the settlement agreement, which includes
19 statements about the parties' discussions during mediation, without seeking to seal either of these
20 documents. *See* section II.B. When Defendants requested QWines to explain why only Defendants
21 had violated confidentiality provisions when ***QWines*** had filed its motion publicly first, QWines
22 had no response. *See* Ou Decl. Ex. B. The binding term sheet that ***QWines*** first filed publicly is a
23 document traditionally afforded confidentiality protection. *See Facebook, Inc. v. ConnectU, Inc.*,
24 No. 07-cv-1389 JW, 2008 WL 11357787, at *3–4 (N.D. Cal. July 2, 2008) ("terms of the settlement
25 [agreement]" is a document "traditionally kept secret" and not subject to disclosure under the
26 federal common law right of access). QWines attempt to excuse its own disclosures while
27 attempting to exclude Defendants' disclosures from the Court cannot be squared under any legal
28 justification.

Case No. 3:20-cv-01722-JD (JSC)     - 8 -     DEFENDANTS' OPPOSITION TO
                                              PLAINTIFF'S MOTION TO STRIKE

1    Once QWines publicly filed the binding term sheet and statements in its motion that reflected the parties' discussions during mediation, Defendants did not believe there was justification to seek sealing of any statements under this Court's procedures for sealing court filings in its Standing Order for Civil Cases.

The confidentiality provision in the parties' mediation agreement protects confidentiality ***only to the extent allowed by law***. To justify a sealed filing, the Ninth Circuit requires the party to make a "particularized showing" of good cause. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). The party seeking to protect a document from disclosure "bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

In view of the QWines' public disclosure and the terms of the parties' mediation agreement, Defendants did not believe they could meet their burden to show "good cause" sufficient to seal any portions of their opposition. First, a confidentiality provision alone does not constitute "good cause." *See Bernstein v. Target Stores, Inc.*, No. 13-cv-1018 NC, 2013 WL 5807581, at *3 (N.D. Cal. 2013) ("The existence of a confidentiality provision, without more, does not constitute good cause, let alone a compelling reason, to seal."); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (similar).  And because QWines had already filed the binding term sheet and its motion publicly, it was unclear what specific harm or prejudice to either party would result from additional disclosure of documents and information that had already been disclosed publicly. *See CreAgri, Inc. v. Pinnaclife Inc.*, No. 11-cv-6635-LHK, 2014 WL 27028, at *2 (N.D. Cal. Jan. 2, 2014) ("Where the parties clearly cannot meet the standards, because, for example, information sought to be sealed was already publicly disclosed, the Court denies with prejudice the sealing requests."); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-1846-LHK, 2012 WL 4718104, at *3 (N.D. Cal. Sept. 28, 2012) ("[A]ll of the exhibits . . . are already publically available, . . . because they are documents from other court cases that have not been sealed. This Court has previously ruled that information that is already in the public record fails even to satisfy the 'good cause' standard.")

Finally, Defendant's opposition was filed on January 12, 2023, *three weeks* before QWines first raised any confidentiality concerns with Defendants.[1] While QWines sought expedited relief was appropriate to "remove such statements from the public record as quickly as possible," Dkt. 100 at 2:27–3:1, QWines did not explain why it waited three weeks before seeking expedited relief. Nor did QWines respond to Defendants' offer to not oppose QWines moving to seal the statements it previously filed publicly without objection, if confidentiality was its true concern.

In sum, QWines allegations of confidentiality violations (1) are not supported by any legal protection or the parties' mediation agreement, and (2) are unfounded given QWines' first public disclosure of documents and statements related to the parties' mediation through its own motion to enforce the settlement agreement.

### C.  Sanctions Are Not Warranted

As Defendants have not violated any provision of the mediation agreement, QWines' request for sanctions is not warranted. Given the lack of support for QWines' position—both in the motion to enforce the settlement agreement, this motion to strike, and its motion to shorten time despite waiting many months to raise this dispute—it is QWines who has multiplied the proceedings in this case, which has been dismissed with prejudice, unreasonably and vexatiously. If the Court finds that any fee shifting is appropriate, those sanctions should be levied on QWines under Section 19 of the Agreement to Mediate that QWines relies on in its motion, or in the alternative under 28 U.S.C. § 1927, not Defendants.

### IV.  **CONCLUSION**

Defendants respectfully request the Court to deny QWines' Motion to Strike Portions of Defendants' Opposition to Motion to Enforce Settlement Agreement.

---

[1] In its motion, QWines further contends it believed Defendants sought to "disregard" confidentiality provisions as early as January 3, 2023, almost a *month* before first raising the issue to Defendants. *See* Dkt. 99 at 3:4–5.; Ou Decl. Ex. D.

| | | |
|---|---|---|
| 1 | DATED: February 10, 2023 | YAR R. CHAIKOVSKY<br>PHILIP OU<br>DAVID OKANO<br>WOENHO CHUNG<br>PAUL HASTINGS LLP |
| | | |
| | | By: */s/ David Okano*<br>    DAVID OKANO |
| | | Attorneys for Defendants<br>Quintessential Brands S.A., et al. |