# EXHIBIT C

| STATEMENTS IN QWINES' MOTION TO ENFORCE | STATEMENTS IN RESPONSE IN DEFENDANTS' OPPOSITION TO MOTION TO ENFORCE |
|---|---|
| **Section 7 (email domain name and website creation) discussions during mediation** ||
| **S. Kreps Decl. ¶ 3, D. Kreps ¶ 7**<br>"It was my understanding at the time of execution of the Term Sheet that the Parties intended for Section 7's requirements . . . to mean that QB N.A. was to . . ."<br>**D. Kreps Decl. ¶ 8**<br>"I would not have executed the Term Sheet if I had believed that the Parties intended to allow QB N.A. to continue using the @quintessentialbrands.com email domain, or if QB N.A. had intended to merely create a placeholder for its website."<br>**S. Kreps Decl. ¶ 4, D. Kreps Decl. ¶ 10**<br>"It was my understanding at the time of execution that the Parties intended the Term Sheet to become final and fully enforceable if they were unable to subsequently execute a "formal" agreement."<br>**Mot. to Enforce 11:6 – 11:9**<br>"The obligation to create a website is an essential element of Section 7, and was essential consideration for settling Plaintiff's claims for trademark infringement against the QB Parties, based on their use of "Quintessential," and eliminating the confusion alleged in the Second Amended Complaint."<br>**Mot. to Enforce 11:15 – 11:17**<br>"The Parties of course did not intend for QB N.A. to merely register a domain name, or to simply create an "under construction" webpage, and continue operating in conjunction with quintessentialbrands.com."<br>**Mot. to Enforce 10:2 – 10:5**<br>"The Parties obviously intended QB N.A.'s obligations of Section 7 to benefit Plaintiff— they require QB N.A. to change its conduct and cease doing business as "Quintessential Brands North America," which are among the very remedies requested in the Second Amended Complaint." | **Visone Decl. 3:4 – 3:13**<br>"QBNA's email domain name was discussed by the parties . . . . I voiced my opposition . . . . As a result of my opposition . . . . The compromise reflected in Section 7 of the Term Sheet was discussed . . . [O]mission of a requirement for QBNA to change its email domain name, reflects the negotiated terms . . . ."<br>**Ou Decl. 3:21 – 4:28**<br>[Statements about the parties' discussions, pertaining to Section 7 of the Term Sheet.]<br>**Opposition to Mot. Enforce 11:3 – 11:6**<br>"While modifying QBNA's email domain name was discussed during mediation, it was never a term agreed to be included in the Term Sheet. Both parties were aware that QBNA's email domain name would not change." |
| **Section 10 (related applications) discussions during mediation** ||
| **S. Kreps Decl. ¶ 5; D. Kreps Decl. ¶ 11** | **Visone Decl. 5:2 – 5:6** |

| STATEMENTS IN QWINES' MOTION TO ENFORCE | STATEMENTS IN RESPONSE IN DEFENDANTS' OPPOSITION TO MOTION TO ENFORCE |
|---|---|
| "It was my understanding at the time of execution of the Term Sheet that the Parties intended the term "related applications" in Section 10 to refer to . . ." <br> **D. Kreps Decl. ¶ 9** <br> "I would not have executed the Term Sheet if I had believed that it was limited to settlement between the Parties in the United States." <br> **S. Kreps Decl. ¶ 4, D. Kreps Decl. ¶ 10** <br> "It was my understanding at the time of execution that the Parties intended the Term Sheet to become final and fully enforceable if they were unable to subsequently execute a "formal" agreement." <br> **Mot. to Enforce 15:3 – 15:6** <br> "Neither Party intended such a construction, as evidenced by their separate assertions that the other Party cannot challenge their respective pending 'related applications,' notwithstanding the fact that neither Party has obtained registrations under Section 10." <br> **Mot. to Enforce 13:2 – 13:7** <br> "If the QB Parties had intended to exclude foreign applications from this obligation, they could easily have limited the scope of the agreement to the United States by such language. . . . Without such construction, there is no true settlement. Plaintiff otherwise would not have participated in such a limited settlement discussion." <br> **Mot. to Enforce 14:18 – 20** <br> "Here, the Parties intended to resolve the oppositions and permit registration of their respective marks. There was no intent to create a condition precedent based on the formality of executing a separate agreement." | "I told the Kreps [during the June 7, 2022, session] that . . . . Judge Walker suggested . . . . after considering the proposed revisions" <br> **Visone Decl. 5:6 – 5:10** <br> "During these discussions, I did not communicate . . . . nor did Mssrs. Kreps suggest or discuss . . . ." <br> **Ou Decl. 5:9 – 5:26** <br> [Statements about the parties' discussions pertaining to Sec. 10 of the Term Sheet.] <br> **Opposition to Mot. to Enforce 2:26 – 3:2** <br> "The addition of 'and related' was raised by Mr. Visone in direct discussions with Mssrs. Kreps, while in the presence of Judge Walker. Mr. Visone emphasized that the purpose of 'related' was solely to allow the filing of a U.S. trademark application for 'Quintessential Brands' in Class 32 relating to non-alcoholic beverages . . ." (citations omitted). <br> **Opposition to Mot. to Enforce 3:2 – 3:5** <br> "Mr. Visone did not indicate to Mssrs. Kreps that 'and related' included any other application. Mr. Visone did not discuss with Mssrs. Kreps, nor did the parties ever discuss during the mediation session, any foreign trademarks or foreign trademark proceedings in the EU and UK." (citations omitted). <br> **Opposition to Mot. to Enforce 4:5 – 4:10** <br> "'non-US marks' were never discussed or agreed to during the mediation . . . It did not include any terms relating to non-US marks as they were never discussed." <br> **Opposition to Mot. to Enforce 14:13 – 14:16** <br> "The addition of 'related applications' was intended to cover a soon-to-be-filed United States trademark application in Class 32 for non-alcoholic beverages. There was never any discussion of adding terms covering foreign trademarks or parties not named in the litigation." |
| **Post-mediation discussions to execute a final settlement agreement** ||
| **Passarelli Decl. ¶ 2** | **Ou Decl. 1:16 – 3:13, Exhibit G** |

| STATEMENTS IN QWINES' MOTION TO ENFORCE | STATEMENTS IN RESPONSE IN DEFENDANTS' OPPOSITION TO MOTION TO ENFORCE |
|---|---|
| "The Parties did not settle the action at the sessions, but maintained discussions for several months thereafter." **Passarelli Decl. ¶ 4** "Subsequent to the Mediation, the Parties' attorneys exchanged drafts of a 'formal settlement and release agreement,' but the Parties were unable to agree on the detailed terms and did not execute any further agreements." **Mot. to Enforce 3:14 – 3:15** "The Parties attempted to prepare a 'formal' agreement, but were unable to agree on detailed terms." **Mot. to Enforce 3:5 – 3:6** "The Parties attended mediation sessions in late 2020, but were unable to resolve their dispute." | [Discussions pertaining to formal settlement agreement] **Opposition to Mot. to Enforce Sec. II.C** [The Parties' unsuccessful efforts to execute a final settlement agreement] **Opposition to Mot. to Enforce 14:17 – 14:19** "QWines attempted to add terms relating to foreign applications for the first time in June 22, 2022, in its response to Defendants' proposed draft of a final settlement agreement." (citations omitted.) **Opposition to Mot. to Enforce 5:9–10** "given the inconsistency between their declarations and statements during and following the mediation." |
| **Post-mediation disagreements regarding Sections 7 and 10** ||
| **D. Kreps Decl. ¶ 12 – 14, Exhibits A, B** [Correspondence between Mr. Visone and Mr. Dennis Kreps.] **Passarelli Decl. ¶ 7, Mot. to Enforce 5:25 – 6:6.** "On September 13, 2022, I received an email from the QB Parties' counsel, Philip Ou, stating, 'At this time, please do not ask Denis to communicate further with Enzo.' Subsequent to this email from counsel, Dennis Kreps sent an email directly to Enzo Visone. On October 4, 2022, the QB Parties' counsel stated, 'we asked that Dennis not communicate further with Enzo. Despite that, we understand that Dennis sent a further email to Enzo, which had some unhelpful comments.'" **Passarelli Decl. ¶ 8** "On October 8, 2022, I sent an email to Philip Ou asking, 'Is your client willing in good faith to engage in another mediation session . . . ?' On October 18, I sent a follow up email reiterating the offer to return to mediation. On October 26, 2022, Mr. Ou responded, stating, 'our client is not willing to incur the additional | **Visone Decl. 3:18 – 4:13 (and Exhibit B)** "On September 15, 2022, I received an email from Dennis Kreps . . . [in which he wrote] '[m]y suggested fix to the email situation is . . . .' I responded to Mr. Kreps that day. In my response, I explained . . . ." **Opposition to Mot. to Enforce 6:24 – 6:26** "I think I remember a discussion beginning around the June meeting that began to lay out all of the details but it was agreed it was not necessary." **Opposition to Mot. to Enforce 11:6 – 11:10** "Indeed, in an October 3, 2022 email, Mr. Kreps of QWines conceded to Mr. Visone that the express provisions of section 7 did not require QBNA to change its email name (Mr. Kreps admitting: 'I assumed when you agreed to change the US based website that included changing the emails as well.')." (citations omitted) **Opposition to Mot. to Enforce 14:19 – 14:21** "In response, Defendants repeatedly emphasized that foreign applications were never agreed to be included in Section 10 |

| STATEMENTS IN QWINES' MOTION TO ENFORCE | STATEMENTS IN RESPONSE IN DEFENDANTS' OPPOSITION TO MOTION TO ENFORCE |
|---|---|
| expense and inconvenience of further mediation.'"<br>**Mot. to Enforce 6:14 – 6:17**<br>"Mr. Visone's response upon being notified of the confusion was completely dismissive: 'Dennis, we are adhering to our agreement and can assure you that we will always cooperate in mitigating/eliminating areas of confusion but now we need to move on.'"<br>**Mot. to Enforce 6:23 – 6:25**<br>"Mr. Visone's response in pertinent part was: 'We are now only trading as QB North America and it should not take too much time before the market gets used to the 'new' name which should limit if not eliminate confusion.'" | (citations) (July 6, 2022 email explaining that Section 10 'did not include any terms relating to non-US marks as they were never discussed')."<br>**Opposition to Mot. to Enforce Sec. II.E**<br>[Correspondence between Mr. Visone and Mssrs. Kreps.] |